Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| VERÓNICA MARTÍNEZ NÚÑEZ; MENOR F.O.M.  Peticionaria  v.  UNIVERSIDAD DE PUERTO RICO, DR. JULIO C. NARVÁEZ OMS, SIMED  Recurrida | TA2026CE00294 | *Certiorari* Procedente del Tribunal de Primera Instancia, Sala de SAN JUAN  Caso Núm.: SJ2022CV00324  Sobre: Impericia Médica Daños y Perjuicios |
| --- | --- | --- |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 13 de abril de 2026.

Comparece ante nos Verónica Martínez Núñez (señora Martínez Núñez o parte peticionaria), mediante el presente recurso de *certiorari*, y solicita que revoquemos la *Orden*, emitida y notificada el 9 de febrero de 2026 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] Mediante el aludido dictamen, el TPI denegó la solicitud de permitir que la prueba pericial de la parte peticionaria se presente por videoconferencia durante el juicio en su fondo en un caso de impericia médica.

Evaluado el legajo apelativo y los argumentos de las partes, resolvemos expedir el auto el auto de *certiorari* y **revocar** la determinación recurrida.

-I-

El presente caso tiene su génesis el 18 de enero de 2022, cuando la señora Verónica Martínez Núñez (Martínez Núñez o parte peticionaria), en

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) TPI, Entrada Núm. 249.

nombre y representación de su hija menor de edad, F.O.M. (menor F.O.M.),[2] instó una *Demanda* contra la Universidad de Puerto Rico (UPR), el Dr. Julio C. Narváez Oms (Dr. Narváez) y, el Sindicato de Aseguradores para la Suscripción Conjunta de Responsabilidad Médico-Hospitalaria (SIMED) como su aseguradora, (en conjunto, la parte recurrida).[3] En síntesis, alegó que la menor F.O.M. fue tratada por el Dr. Narváez, quien le diagnosticó una úlcera en la córnea. Emana de las alegaciones que, en la cita de seguimiento, el doctor decidió emplear un procedimiento que le provocó una perforación de córnea y, dado que tal perforación no fue sellada a tiempo, la menor sufrió la pérdida de la visión del ojo izquierdo. Se señaló, además, que la menor ya no tiene posibilidades de recuperar la vista por ese ojo como consecuencia del manejo médico negligente del Dr. Narváez y del personal de la residencia de oftalmología del Hospital Pediátrico Universitario que intervino en su tratamiento.

A su vez, la peticionaria afirmó que, como consecuencia de la negligencia exclusiva de la parte recurrida, la menor F.O.M. ha sufrido y sufrirá los daños físicos, sufrimientos morales y angustias mentales por la pérdida total y permanente de la visión en su ojo izquierdo, que estima en la suma de $1,000,000.[4] Asimismo, la señora Martínez Núñez reclamó por sus propios daños, sufrimientos morales y angustias mentales, que estima en la suma de $500,000. Por otro lado, expuso que ha incurrido e incurrirá en gastos médicos o psicológicos que se estiman en la suma de $100,000.

---

[2] Madre con patria potestad y custodia de la menor F.O.M. de 16 años de edad.

[3] SUMAC TPI, Entrada Núm. 1. Se presentó *Demanda Enmendada* el 5 de abril de 2023. Ello, a los fines de incluir como demandante y alegar los daños del menor A.T.M. de 16 años de edad, y a su padre, Evaristo Torres Ramos, así como incluir a Anibal Ortiz Stern, padre de la menor F.O.M. Véase, *Íd.*, Entrada Núm. 66.

[4] En la *Demanda Enmendada* se incluyeron las siguientes partidas en concepto de daños: por la incapacidad parcial de la menor F.O.M. estimada en 20% de sus funciones fisiológicas generales, se reclamó el menoscabo para generar ingresos valorado en una suma no menor de $250,000; por los sufrimientos y angustias mentales del menor A.T.M se estimó la suma de $50,000. Véase, *Íd.*, Entrada Núm. 66.

El Dr. Narváez junto con SIMED y, la UPR, presentaron *Contestación a la Demanda* el 14 de febrero y el 29 de marzo de 2022, respectivamente.[5] Así, la parte recurrida negó cualquier imputación de negligencia. En su contestación, el Dr. Narváez junto a SIMED aceptó haber tratado a la paciente, pero aseveró que la menor no tenía buena salud visual previo a la fecha de la alegada negligencia. Además, alegó que en el año 2017 la menor había visitado sus oficinas y se le proveyó tratamiento médico que ésta no siguió.

Culminado el descubrimiento de prueba y tras varios incidentes procesales que incluyen múltiples controversias en cuanto al descubrimiento de prueba y la fijación de honorarios de los peritos, el 5 de septiembre de 2024, el TPI celebró una vista sobre el estado de los procedimientos.[6] Cabe señalar que, en dicha *Minuta* el foro de instancia hizo constar que la parte peticionaria, solicitó "que el testimonio de su perito sea mediante el sistema *Zoom*".[7] En lo pertinente al presente recurso, en ese momento el TPI hizo las siguientes determinaciones:

- De no haber objeción ni haya que utilizar intérprete, **estaría en posición de considerar que algunos testigos participen mediante el sistema *Zoom*.**
- El Juicio en su Fondo se señala para los días 22, 23, 24, 25, 28, 29 y 30 de abril de 2025 y continúa el 1 y 2 de mayo de 2025, a las 10:00 a.m., presencial.[8]

Así las cosas, tras aplazar en varias instancias la Conferencia con Antelación a Juicio (CAJ), el 24 de marzo de 2025, el TPI emitió una *Orden* en la que confirmó todas las fechas de juicio, a excepción del 23 de abril de 2025, y advirtió que el juicio era presencial.[9] Ahora bien, en el mismo día, la parte peticionaria presentó *Moción solicitando que el testimonio del Dr.*

---

[5] *Íd.*, Entradas Núm. 8 y 22. La UPR y el Dr. Narváez junto con SIMED, presentaron *Contestación a la Demanda Enmendada* el 28 de junio y 6 de julio de 2023, respectivamente. Véase, *Íd.*, Entradas Núm. 127 y 131.
[6] SUMAC TPI, Entrada Núm. 200.
[7] *Íd.*
[8] *Íd.*
[9] *Íd.*, Entrada Núm. 207.

*Amescua sea brindado de manera remota.*[10] En síntesis, la parte peticionaria fundamentó su solicitud en que, dada la recalendarización de la CAJ, ya no le era posible al perito ofrecer el testimonio según se había coordinado. En particular, informó que el perito tenía un compromiso profesional en México el 24 de abril de 2025 el cual le resultaba imposible cancelar. Por otra parte, alegó que carece de los recursos económicos necesarios para sufragar los costos que supone la comparecencia del perito de forma presencial en el juicio. Así, reiteró no tener reparo en que el juicio se celebrase de forma presencial, con la única excepción del testimonio del perito Dr. Amescua.

El 25 de marzo de 2025, el Tribunal de Primera Instancia emitió una *Orden* en la que dispuso que la parte demandante tendría que hacer los arreglos para presentar su prueba de manera presencial.[11] En su disposición, el TPI expresó:

> Este Tribunal siempre enfatizó que el **juicio sería presencial**. En ningún momento se solicitó modificación alguna. Un caso de impericia médica donde la prueba pericial es esencial, **a nuestro juicio y discre[c]ión judicial en el manejo de sala**, es imperativo que se presente a dichos peritos de manera presencial para que el Tribunal pueda tener un mejor entendimiento de la materia técnica. Por otra parte, **las vistas mediante videoconferencia no es un derecho de la parte ni una garantía, sino un mecanismo a utilizar a discre[c]ión del Tribunal**.[12] (Énfasis añadido).

Inconforme, el 26 de marzo de 2025, la parte peticionaria presentó reconsideración de la negativa del foro de instancia a permitir que el Dr. Amescua brindara su testimonio de manera remota.[13] Expuso, no estaba en cuestionamiento el carácter presencial del resto del proceso, sino que, la solicitud era limitada a un solo testimonio y plenamente justificada. Adujo que, negarle la oportunidad de presentar el testimonio del perito por la única vía a su alcance -la remota- equivale, en ese momento procesal, a

---

[10] *Íd.*, Entrada Núm. 208.
[11] *Íd.*, Entrada Núm. 209.
[12] *Íd.*
[13] *Íd.*, Entrada Núm. 210.

penalizarla por su condición económica, cuando en su mayor parte, se alegan daños físicos y emocionales sufridos por una menor de edad.

Por su parte, el Dr. Narváez junto con SIMED, presentó su oposición.[14] Al hacerlo, sostuvo que la parte peticionaria no solicitó litigar como indigente, por lo cual, no podía alegar no contar con los recursos económicos para costear la presencia del perito en el juicio. Añadió, el hecho de que los codemandados hayan depuesto al perito por videoconferencia fue una discreción de los abogados y no implica que no se tenga que traer al perito a Puerto Rico para el juicio. A su vez, adujo que se debía traer al perito al tribunal, para que así se pudiera llevar el debido contrainterrogatorio. Por último, expuso que el hecho de que dicho perito testifique de forma remota solo beneficia a los peticionarios y no a los recurridos en el presente caso.

El 27 de marzo de 2025, el TPI emitió *Orden* en la que declaró *No Ha Lugar* la reconsideración y reiteró, nuevamente, que el juicio sería presencial y que el testimonio de los peritos se requería presencial.[15] Posterior a ello, el 28 de marzo de 2025, los peticionarios solicitaron la suspensión del juicio.[16]

En su *Moción Solicitando la Suspensión del Juicio por Causa Justificada*, acreditaron que el perito Dr. Amescua les remitió una comunicación vía correo electrónico en la que expuso que le es imposible brindar su testimonio de manera presencial en esas fechas.[17] Específicamente, allí el perito informó que su agenda de pacientes para cirugía quirúrgica estaba llena por los siguientes 3 meses, y la de pacientes por 6 meses. Además, notificó que en su trabajo se requiere por lo menos 8 semanas de anticipación para cancelar clínica y cirugías. Debido a estas circunstancias

---

[14] *Íd.*, Entrada Núm. 212.
[15] *Íd.*, Entrada Núm. 214.
[16] *Íd.*, Entrada Núm. 216.
[17] *Íd.*, Anejo *Email*.

particulares, el perito indicó que "[e]n el supuesto de que no se acepte mi testimonio remoto, tendría que planear con bastante anticipación un viaje a Puerto Rico. Si esa fuera la determinación final, le agradeceré que me envíen antes del 31 de mayo un estimado de $ 6000 por mi tarifa profesional, y la cantidad de $ 1000 para cubrir gastos estimados de viaje, hotel, taxi y comidas, a fin de separar las fechas.".

Debido a ello, la parte peticionaria sostuvo que no cuenta con los recursos para costear la comparecencia presencial del perito para el mes de abril y tampoco para cubrir los adelantos en honorarios. Argumentó pues que, dado que éste es quien ha evaluado los hallazgos médicos oftalmológicos, ha sido depuesto y conoce el caso, no puede prescindir del testimonio del perito ya que no es sustituible en la presente etapa procesal. Añadió también que su ausencia le privaría de presentar prueba esencial sobre la actuación negligente atribuida a la parte recurrida y su nexo causal con los daños alegados. Así, solicitó al Tribunal que, (a) suspendiera el juicio, por justa causa; (b) señalase una nueva fecha de juicio posterior al mes de noviembre de 2025, o cuando las circunstancias permitan que esta parte pueda garantizar la comparecencia presencial de su perito. Se acompañó con esta moción dos certificaciones que reflejan parte de la condición económica de la parte peticionaria.[18]

El Dr. Narváez junto con SIMED, presentó oposición el 31 de marzo de 2025, en la que arguyó que la solicitud de la parte peticionaria de transferir la vista en su fondo no estaba fundamentada en derecho.[19] Planteó, si la parte no puede pagar los honorarios de dicho perito en ese momento, tampoco los podrá pagar en un futuro, y retrasar el presente caso para el año 2026 les resultaba muy oneroso.

---

[18] Las certificaciones son, una del Departamento de la Familia (Programa PAN) y de la Administración para el Sustento de Menores (ASUME). La certificación de ASUME refleja el que la señora Martínez Núñez recibe $170.00 en concepto de pensión alimentaria. Además, la certificación de los beneficios del PAN acredita que los recursos de la familia son de $505.00.

[19] *Íd.*, Entrada Núm. 217.

Ante ese cuadro, el 1ro de abril de 2025, el Tribunal reiteró que el señalamiento de 9 días de juicio era más que suficiente para que la parte demandante hiciera los arreglos pertinentes para la comparecencia del perito.[20] Así, el Tribunal celebró la Conferencia con Antelación a Juicio el 8 de abril de 2025.[21] Es menester destacar que, en dicha *Minuta* el Tribunal hizo constar lo siguiente:

> • Se examinó el expediente y se corroboró que el juicio en su fondo es de manera presencial y que <u>en ningún momento la parte demandante o las demás partes solicitaron medidas adicionales para que algún testigo declarase de manera remota.</u>
> • El licenciado Velázquez informó que no solicitó formalmente que su perito testificara de manera remota, ofreció disculpas ante tal situación e <u>indicó que pudo lograr que su perito…, separe tres días para dar su testimonio de manera presencial.</u>
> • En ningún momento el Tribunal consideró eliminar el perito de la parte demandante.
> • La Juez que preside la sala indicó las razones por las cuales exige que la prueba pericial testifical, en un caso de impericia médica, sea presencial. Expuso además que la orden de calendarización de juicio indicaba claramente que el mismo se celebraría de manera presencial.[22] (énfasis suplido)

Además, se reseñaló el Juicio en su Fondo para los días 17-20 y 23-27 de febrero de 2026 de manera presencial. Ahora bien, la parte peticionaria presentó *Moción de Transferencia de Juicio* por una situación médica.[23] Así, el foro primario emitió orden de recalendarización del juicio en su fondo, para las fechas del 6-17 de julio de 2026.[24] De igual forma, el Dr. Narváez junto a SIMED, presentó *Moción solicitando transferencia de nuevo señalamiento de vista en su fondo* por conflicto de calendario.[25] El 8 de enero de 2026, el Tribunal reseñaló el juicio en su fondo para los días 16-18 de noviembre, 7-11 y, 14-15 de diciembre de 2026. En la *Minuta*, el foro de instancia consignó que la parte peticionaria debía informar en los próximos 5 días la disponibilidad del perito Dr. Amescua para el juicio.[26]

---

[20] *Íd.*, Entrada Núm. 220.
[21] *Íd.*, Entrada Núm. 226.
[22] *Íd.*
[23] *Íd.*, Entrada Núm. 231
[24] *Íd.*, Entradas Núm. 238 y 239.
[25] *Íd.*, Entrada Núm. 241.
[26] *Íd.*, Entrada Núm. 243.

De ahí que, el 14 de enero de 2026, la parte peticionaria volvió presentar *Moción solicitando autorización para testimonio pericial por videoconferencia*.[27] Allí informó que el 10 de enero de 2026, el Dr. Amescua le envió un correo electrónico en el que reiteró su disposición para colaborar en el caso, pero explicó que por compromisos familiares y laborales no podría viajar a Puerto Rico en diciembre. Detalló su agenda clínica, quirúrgica y docente, y solicitó que se considerara la posibilidad de rendir su testimonio por videoconferencia.[28]

Al día siguiente, el Dr. Narváez junto a SIMED, presentó oposición a la solicitud de testimonio remoto.[29] Adujo que los fundamentos de la petición ya habían sido discutidos en la CAJ y que el Tribunal ordenó la presencia del perito en el juicio. También insistió en que tenían derecho a que el contrainterrogatorio del perito Dr. Amescua se realizara de manera presencial y que la parte demandante no había planteado nada nuevo respecto a lo discutido en la vista. Por su parte, la UPR presentó un escrito uniéndose a la oposición radicada por los codemandados.[30]

El 26 de enero de 2026, el Tribunal emitió una *Orden* en la que declaró *No Ha Lugar* la solicitud de la parte demandante para que el testimonio del Dr. Amescua se recibiera mediante videoconferencia.[31] El Tribunal se reiteró en sus determinaciones previas, "[q]ue han sido varias y ha expuesto las razones para ello. Se requiere que el testimonio del perito de la parte demandante sea presencial".[32]

---

[27] *Íd.*, Entrada Núm. 244.

[28] *Íd.*, Anejo *Comunicación por correo electrónico*. "Cerrar quirófano en diciembre es muy complejo logísticamente para mí, y financieramente para el hospital. La Universidad es muy estricta con nosotros para un buen manejo de los tiempos quirúrgicos. [L]e ruego de la manera más cordial considerar la posibilidad de que mi testimonio pueda ser virtual…, modalidad en la que tengo experiencia previa en otros procesos legales y que ha funcionado de manera óptima".

[29] *Íd.*, Entrada Núm. 245.

[30] *Íd.*, Entrada Núm. 246.

[31] *Íd.*, Entrada Núm. 247.

[32] *Íd.*

El 7 de febrero de 2026, la parte peticionaria presentó una moción solicitando la reconsideración.[33] Presentó como anejo, la información provista por el Dr. Amescua en el que describió con precisión su agenda institucional y añadió que ausentarse en diciembre representaba un problema financiero significativo.

El día 9 de febrero de 2026, el TPI emitió *Orden* en la que declaró *No Ha Lugar* la solicitud de los peticionarios y dispuso:

> Desde los inicios de este caso, este Tribunal ha sido claro y consistente en que <u>los juicios en este salón de sesiones serán presenciales</u>. En particular, <u>los juicios de impericia médica requieren de una prueba pericial que para quien preside este caso resulta indispensable que ese testimonio se presente de manera presencial</u>. No es sorpresa para la parte demandante la posición de este Tribunal al respecto. La razón de la recalendarización de juicio se debió a una solicitud del abogado de la parte demandante, por razones de salud que entendemos justificadas. No obstante, esto no cambia en forma alguna las instrucciones dadas en este salón de sesiones en relación a que la prueba pericial en juicios se presente en sala y no por videoconferencia.
> La parte demandante conoce que, de prevalecer, podrá recuperar los gastos razonables y honorarios del perito. No ha lugar a la solicitud de la parte demandante.[34]

(subrayado nuestro)

En desacuerdo aun, el 9 de marzo de 2026, la parte peticionaria acudió ante nos mediante el recurso de epígrafe y señaló la comisión del siguiente error:

> Erró el TPI al denegar la solicitud de que el perito Dr. Guillermo Amescua rindiera su testimonio por videoconferencia, imponiendo una regla rígida de comparecencia presencial que, sin análisis individualizado de las circunstancias del caso, de la inhabilidad económica acreditada, de la ausencia de perjuicio concreto y de la disponibilidad de la Sala Inteligente, tuvo el efecto práctico de excluir la única prueba pericial esencial de la parte peticionaria.[35]

Por su parte, la parte recurrida, Dr. Narváez junto a SIMED y, la UPR, presentaron su oposición a la expedición del *certiorari*.[36] Estudiado el

---

[33] *Íd.*, Entrada Núm. 248. Se presentó como Anejos, otra comunicación del perito vía correo electrónico con fecha del 31 de enero de 2026 y las certificaciones de ASUME y Programa PAN. El perito detalló que cerrar un día de quirófano le supone una pérdida aproximada de entre $4,000 y $5,000, y que cerrar un día de clínica genera un costo para el hospital de alrededor de $7,000, además del impacto operativo para la institución.
[34] *Íd.*, Entrada Núm. 249.
[35] SUMAC TA, Entrada Núm. 1.
[36] *Íd.*, Entradas Núm. 5 y 6.

expediente ante nos, y con el beneficio de la comparecencia de las partes, procedemos a resolver.

-II-

*A.*

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023) al citar a *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021) y otros. La característica distintiva del recurso de *certiorari* descansa en la discreción encomendada a este Tribunal de Apelaciones para autorizar su expedición y adjudicar sus méritos. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *BPPR v. SLG Gómez-López*, 213 DPR 314, 335 (2023) y casos allí citados. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd*.

Ahora bien, en los procesos civiles, los preceptos que regulan la expedición de un auto de *certiorari* se encuentran en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. *Rivera et al. v. Arcos Dorados et al.*, *supra*, pág. 207-208. La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo." Asimismo, y a manera de excepción, se podrá expedir este auto discrecional cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés

público o en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia." *Íd.*

De otro lado, el examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. *800 Ponce de León v. AIG*, 205 DPR 163, 176 (2020). Para ello, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR __ (2025), establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de *certiorari*.

Bajo esa discrecionalidad, la Regla 40 de nuestro Reglamento, *supra*, establece los siguientes criterios:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) *Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) *Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

Estos criterios, pautan el ejercicio sabio y prudente de la facultad discrecional judicial. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

*B.*

"El efectivo funcionamiento de nuestro sistema judicial y la rápida disposición de los asuntos litigiosos requieren que los jueces de instancia tengan gran flexibilidad y discreción para lidiar con el diario manejo y

tramitación de los asuntos judiciales". *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023), al citar a *In re Collazo I*, 159 D.R 1421, 150 (2003) y *Pueblo v. Vega, Jiménez*, 121 DPR 282, 287 (1988). Así, el Tribunal de Primera Instancia tiene amplia discreción sobre el manejo de los casos que ante sí se ventilan.[37]

Los jueces de primera instancia "tienen a su alcance múltiples mecanismos procesales para mantener y asegurar el orden en los procedimientos ante su consideración, para hacer cumplir a cabalidad sus funciones." *In re Collazo I*, supra; *ELA v. Asociación de Auditores*, supra. Igualmente, poseen amplia facultad para revolver los procesos que se encuentran ante su consideración. También, están compelidos a actuar activamente en el manejo de los casos. Su objetivo es que se logre una solución justa, rápida y económica de los litigios. *Vives Vázquez v. ELA*, 142 DPR 117 (1996).

Es norma legal, que prevalezca el criterio del juez de la corte primaria si se funda en base razonable y no resulta perjudicial a los derechos sustanciales de una parte. Además, no entraremos o sustituiremos el discernimiento utilizado por el juez que atiende los procesos, salvo, que haya incurrido en perjuicio, parcialidad, error manifiesto o error en el ejercicio de su discreción. Véase, *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012) y *Luch v. España Services Sta.*, 117 DPR 729, 745 (1986).

La deferencia al juicio y a la discreción del foro sentenciador está fundamentada en el principio de que los foros apelativos no pueden pretender conducir ni manejar el trámite ordinario de los casos que se ventilan ante el Tribunal de Primera Instancia. Como es harto sabido, dicho foro es el que mejor conoce las particularidades del caso y quien está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una disposición final. *Mejías et*

---

[37] Id., al mencionar a *Vives Vázquez v E.L.A.*, 142 DPR 117, 141 (1996).

*al., v. Carrasquillo et al.*, 185 DPR 288, 306-307 (2012). Ahora, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho.[38]  De esta manera, un tribunal abusa de su discreción cuando no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando tras considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.

C.

Como parte del *Plan Estratégico del Poder Judicial de Puerto Rico 2020-2025 Mapa hacia una Justicia de Vanguardia*, el cual constituye la declaración de política pública e institucional del Poder Judicial, se contemplan como metas y estrategias, la **tecnología para la justicia** y el **acceso a la justicia**.

Del *Plan Estratégico* surge que la tecnología es una herramienta efectiva para eliminar barreras de acceso a los tribunales.  Con el fin de alcanzar los objetivos de crear mecanismos electrónicos simples para garantizar el acceso de todas las personas a los procesos judiciales, se pretendió expandir y extender el sistema de videoconferencia a todas regiones judiciales, como mecanismo para reducir los costos de litigación, minimizar las suspensiones de vistas y facilitar la comparecencia de partes, testigos y representantes legales.

Con ese fin, la Oficina de Administración de los Tribunales (OAT) estableció unas guías sobre el uso del sistema de videoconferencias. Allí se acreditó que, la Rama Judicial se propuso potenciar el uso de la tecnología que sirve como herramienta facilitadora del acceso a la justicia, agiliza los

---

[38] *BPPR v. SLG Gómez-López*, supra a la pág. 335, al mencionar a *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023).

procesos y mejora la prestación de servicios en los tribunales de Puerto Rico.[39]

Con relación al acceso a la justicia, se ha considerado que el Poder Judicial debe garantizar el acceso efectivo a la justicia y los tribunales de toda persona que, entre otras, por sus <u>circunstancias económicas</u>, confrontan barreras para hacer valer sus derechos. Entre las metas, se detalla el proveer equidad procesal y eliminar las barreras de acceso a la justicia que enfrentan personas en condición de vulnerabilidad. Sobre este particular, el Poder Judicial se propuso <u>ampliar la prestación de servicios de forma remota para eliminar las barreras geográficas y de transportación, de modo que se facilite y aumente el acceso oportuno a los tribunales, se reduzca el costo y la onerosidad de los procesos sobre las partes, testigos o víctimas de delito</u>.

En términos normativos, se puede considerar que el acceso a la justicia también se conceptualiza en la Ley de la Judicatura de 2003, según enmendada, Ley Núm. 201-2003, 4 LPRA 24ª. Allí, se declaran varios objetivos que aluden a la necesidad de implementar el derecho al acceso de la justicia en la Rama Judicial, esto es:

(a) Será independiente y accesible a la ciudadanía; prestará servicios de manera equitativa, sensible y con un enfoque humanista, y operará bajo sistemas para el manejo de casos de forma efectiva y rápida, sin menoscabar los derechos sustantivos y procesales de la ciudadanía.

(b) Contará con un liderazgo estratégico, que permita el desarrollo de diseños y métodos administrativos ágiles, así como con una infraestructura adecuada y tecnología avanzada y eficiente para responder a los cambios sociales.

(c) Promoverá una sociedad menos litigiosa, fomentando otros métodos para solucionar controversias y una amplia participación de todos los sectores involucrados.

(d) Establecerá y mantendrá una relación abierta con las otras ramas de gobierno y sectores de la sociedad civil que permita y facilite la colaboración para el desarrollo de una sociedad sana.

---

[39] RAMA JUDICIAL, Guías Generales para el Uso del Sistema de Videoconferencia en los Tribunales, pág. 9 (13 de marzo de 2020).

(e) Mantendrá jueces altamente cualificados y dispondrá de medios de aprendizaje constantes.

**-III-**

De entrada, reconocemos que la controversia esbozada en el recurso de epígrafe no trata de aquellas instancias reconocidas por la Regla 52.1 de Procedimiento Civil, *supra*, para la expedición de un *certiorari*. La polémica no es sobre una resolución u orden bajo remedios provisionales de la Regla 56, ni sobre *injunctions* de la Regla 57. En la misma, tampoco se plantea la denegatoria de una moción de carácter dispositivo. No obstante, esperar hasta la apelación para atender la situación planteada resultaría en un fracaso a la justicia, por lo que conforme a la citada regla, por excepción, podemos revisar el dictamen interlocutorio recurrido.

Así pues, toda vez que la decisión recurrida recae en la discreción que el TPI tiene para manejar los casos presentados ante sí, nos corresponde resolver si constituyó un abuso de discreción por parte del Tribunal de Instancia el denegar la solicitud de la comparecencia al juicio por videoconferencia de un perito **esencial** a la reclamación de la parte peticionaria. Al resolver de esta manera, el foro de instancia determinó que en este caso de impericia médica el juicio en su fondo es presencial. Así, dispuso que en este tipo de casos donde resulta indispensable la prueba pericial, el testimonio del perito de la parte demandante se debe presentar en sala y no por videoconferencia.

Frente a esta determinación, la parte peticionaria sostiene que el Tribunal decretó una regla rígida de comparecencia presencial, sin realizar un análisis individualizado de las circunstancias del caso. Esto es, la indisponibilidad del perito por su agenda personal y profesional, la inhabilidad económica acreditada por la parte peticionaria y la ausencia de perjuicio a la parte recurrida. Así pues, aduce que la determinación del Tribunal tiene el efecto práctico de excluir su única prueba pericial. Mientras tanto, al defender la decisión recurrida la parte recurrida en

síntesis plantea que la controversia ya fue adjudicada de forma final y firme. Además, arguye que se trata de un asunto enmarcado en la discreción y razonabilidad del foro de instancia.

Aceptamos que, tal como establece la parte recurrida, la determinación del foro de instancia en cuanto a que el juicio es presencial es un asunto que descansa en la sana discreción del Tribunal. Al ser así, como arriba mencionamos, procede evaluar si al denegar la solicitud de la parte peticionaria el TPI incurrió en abuso de la discreción que reconocemos tiene. Con tal propósito, veamos las circunstancias particulares del caso y porqué, a nuestro juicio, así ocurrió.

Conforme surge del expediente, desde septiembre de 2024, la parte peticionaria solicitó que el testimonio de su perito, el Dr. Amescua, residente del estado de Florida, EE. UU., fuera por videoconferencia. **En ese momento, al atender dicha petición el TPI indicó: "[d]e no haber objeción ni haya que utilizar intérprete,** *estaría en posición de considerar que algunos testigos participen mediante el sistema Zoom"*. **(Énfasis nuestro).** Como vemos, aún establecido que el juicio era presencial, en sus inicios, el foro primario manifestó que estaría en posición de considerar la comparecencia de algunos testigos por videoconferencia.

Ahora bien, el legajo apelativo expone que las fechas inicialmente pautadas para el juicio en su fondo, por múltiples razones, han sido recalendarizadas en varias ocasiones, a saber: (1) abril de 2025; (2) febrero de 2026; (3) julio de 2026; hasta llegar al más reciente señalamiento, (4) noviembre-diciembre de 2026. Asimismo, evidencia que, en cada uno de estos momentos, el Dr. Amescua ha manifestado estar impedido de comparecer de manera presencial a las nuevas vistas señaladas. Inclusive,

la imposibilidad del perito a comparecer de forma presencial ha sido en repetidas ocasiones sustentada mediante prueba documental.[40]

A su vez, la parte peticionaria ha enfatizado sus propias limitaciones económicas para cubrir la comparecencia presencial del perito y ha sometido documentos para evidenciar la misma. Este hecho nos resulta sumamente importante, pues tal cual le manifestó el Dr. Amescua, de no permitírsele ofrecer su testimonio de forma remota, la señora Martínez tendría que adelantarle la suma de $7,000.00, para poder separar las fechas.

Igual de transcendental es lo esencial que el testimonio del perito resulta para la parte peticionaria. En el Informe sobre conferencia preliminar entre abogados preparado en el caso, se documentó que el perito Dr. Amescua, es especialista en oftalmología y, subespecialista en córnea y uveítis.[41] Según allí se estableció, el perito declarará sobre los estándares nacionales de cuidado oftalmológico y que, en su análisis pericial, dichos estándares fueron ignorados por los médicos tratantes de la menor F.O.M. Además, testificará sobre las desviaciones específicas al estándar de cuidado y la relación causal directa entre éstas y la pérdida irreversible de visión en el ojo izquierdo de la menor. Sin duda, su ausencia privaría a la parte peticionaria de presentar prueba esencial sobre la actuación negligente atribuida a la parte demandada y su nexo causal con los daños alegados.

Es en virtud de estos factores particulares, que consideramos que el foro primario incurrió en abuso de su discreción al sopesarlos livianamente e insistir en que la comparecencia del Dr. Amescua sea presencial. Más aun, si consideramos que durante la Conferencia sobre el estado de los

---

[40] Es meritorio destacar que, en sus comunicaciones, el perito acreditó detalladamente una serie de compromisos y circunstancias profesionales- entre ellas económicas- que le impedían separar la nueva fecha prevista para el juicio en su fondo. Así pues, en el caso de autos, el propio perito ha reiterado las limitaciones concretas de disponibilidad para su testimonio presencial y aquellas consideraciones económicas que inciden directamente sobre su comparecencia.

[41] *Íd*., Entrada Núm. 221, págs. 47-48.

procedimientos celebrada en el caso el 5 de septiembre de 2024, el Tribunal manifestó estar en posición de considerar que algunos testigos participen mediante el sistema Zoom, o sea, videoconferencia. Pese a esta posición inicial, posteriormente el foro primario descansando únicamente en que es un "asunto de su juicio y discreción en el manejo de sala" y que en casos de impericia médica "es imperativo que se presente a dichos peritos de manera presencial para que el Tribunal pueda tener un mejor entendimiento de la materia técnica." se negó a considerar hacerlo.

A nuestro juicio la discreción y el manejo de sala cede cuando existe un riesgo de menoscabo sustancial en la presentación del caso en sus méritos. Más aún cuando la decisión discrecional resultará en un grave perjuicio para una de las partes.[42] En el presente caso, la imposibilidad de que el perito de la parte demandante comparezca al juicio mediante videoconferencia claramente será perjudicial para la señora Martínez. Mantener como condición la presencialidad en su testimonio, amenaza arbitrariamente con privarla de prueba indispensable para probar su caso. El que el perito testifique mediante videoconferencia no representa impedimento alguno para que el tribunal pueda tener un mejor entendimiento de la materia técnica. Tampoco representa perjuicio para la parte recurrida.

Tal cual ha expresado el Tribunal Supremo de Puerto Rico el mecanismo de videoconferencia es necesario para adelantar particulares intereses, si se ofrecen las garantías de confiabilidad suficientes al amparo del derecho a la confrontación. *Pueblo v. Cruz Rosario*, 204 DPR 1040 (2020). En este caso, no se ha demostrado que, ante la eventualidad de que el perito testifique de forma remota, se afecte el derecho de la parte recurrida al contrainterrogatorio. De hecho, la parte peticionaria propuso como salvaguardas mínimas: identificación frente a cámara; juramentación por el

---

[42] Véase, *Rebollo López v. Gil Bonar*, 148 DPR 673, 678 (1999).

Tribunal o por quien autorice; verificación de que el testigo está solo en un espacio privado; cámara encendida todo el tiempo que muestre rostro y manos; prohibición de comunicaciones externas o asistencia; manejo de *Exhibits* conforme disponga el Tribunal; y advertencias y sanciones por incumplimiento. Además de estas, el Tribunal podría determinar otras garantías para asegurar los intereses de las partes.

En este caso existen barreras geográficas y económicas. El mecanismo de la tecnología permite fomentar el acceso a la justicia y facilita la ventilación del caso en sus méritos A su vez, reduce el costo y la onerosidad de los procesos sobre las partes. Con el fin de trazar nuevos rumbos guiados por la equidad, deben hacerse ajustes para lograr un resultado justo. Ante las circunstancias particulares del caso, encontramos que la mejor forma de garantizar la comparecencia del Dr. Amescua como perito esencial de la señora Martínez y evitar un grave perjuicio al reclamo de esta, es permitir que éste brinde su testimonio por videoconferencia en el juicio en su fondo.

**IV.**

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* y revocamos la *Orden* recurrida.

De modo que, se devuelve el caso al Tribunal de Primera Instancia para que se determine fecha cierta para la presentación del testimonio del perito por videoconferencia.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones